JUSTICE HARRISON,
dissenting:
I would reinstate the jury’s verdict which was set aside by the District Court, provide an off-set to the damages in favor of the Garys for the amounts of the notes held by the Bank, and terminate the case without further reference to a jury for punitive damages. I base this opinion on two grounds: (1) the error in not submitting punitive damages to the same jury is now incurable; and (2) the purpose of *404 punitive damages, by way of punishment to the Bank cannot be effectuated because that Bank has now gone out of existence.
It is unbelievable to me how the District Court dispensed with the punitive damages question. The record shows that the jury held that the Garys were entitled to punitive damages, and the District Court, upon a mere suggestion of counsel for the Bank that a punitive damage award would cause a run on the Bank, refused to submit the issue to the jury which was sitting there waiting to go on. This error is especially grievous, because if the jury had awarded excessive damages, damages that the District Court could not accept, the court had the right to reduce those damages or to remit them altogether upon later review.
In this case, the Bank’s argument in seeking to reverse the verdict or remand for a new trial is that the damages accrued to the corporation and not to the Garys personally, and therefore a new trial is required to separate the damages due the corporation from the damages due to the Garys. However, here the jury found no damages in this case for the corporation, and awarded all the damages to the Garys. The majority’s reversal of the verdict in favor of the Garys for a new trial on that ground does violence to what has happened in this case.
The record indicates that the Bank made a letter agreement with Larry and Mary Gary to provide floor plan financing for their Datsun franchise in Glendive. It also acted as their agent in obtaining financing from the SB A for a building in which the business was to be located. Although the Bank admitted a fiduciary relationship in its pleadings, the court allowed the question of whether a fiduciary relationship existed between the Garys and the Bank to go to the jury. This was totally unnecessary, and the jury obviously determined this issue in favor of the Garys. The Bank provided financing under two notes, one for $7,000 signed by Gary Datsun Inc., which with interest came to $13,894.28 when the court rendered judgment. The second note signed by Larry and Mary Gary for $150,455.13 for which the court rendered judgment with interest and costs came to the sum of $300,378.68.
During the construction of the building, the jury found that the Bank paid more to the contractor (who was indebted to the Bank) than he was entitled, did not keep a reserve of ten percent as the construction costs were advanced, and refused to apply for a renewal of SBA’s commitment for the construction of the building. The Bank *405 claimed, and still claims in its appellate brief, that it never consented to the assignment to Gary Datsun, Inc.; yet the Bank accepted deposits in that name and certainly issued one of its notes to the corporation.
Without notice to the Garys, the Bank exercised a claimed right of set-off by taking interest due on its notes from the business account of Gary Datsun. At that point, understandably, Larry Gary decided to make deposits in another bank to prevent setoffs. Immediately the Bank sent a notice to them terminating its floor plan financing. The Garys were forced to go to another bank, and pay a higher interest rate for their financing.
The record indicates that the building was appraised somewhere in the area of $295,000. Under the judgment as it now stands, after the District Court set aside the verdict for the Garys, they will not only lose their building, but be subjected to a deficiency judgment approaching the original costs of the building.
Here, I find the evidence supported the verdict for the Garys, and base this upon my review of the final arguments made to the jury. The special damages, interest, attorneys fees, accounting fees, bank application fees, amount for completing the building, and all the other items came to $182,284, which the economist who testified placed a value at the time of trial at $413,657. No objection was made to these figures at the time of final argument, and the award of special damages to each of the Garys does not exceed that sum.
Involved here also were damages for emotional distress. Mary Gary apparently attempted to commit suicide sometime following the Bank’s actions. The jury determined that the Garys’ emotional distress was a result of the Bank’s action, and awarded each of the Garys $25,000 for emotional distress.
The jurys awards of $25,000 for emotional distress and special damages are supported by the evidence and should never have been reversed. The general damages may include projections for the business conducted by Gary Datsun, Inc. but that is not important now.
It is interesting to note that in the records of the office of the Secretary of State of the State of Montana, is a notice of involuntary dissolution dated December 8, 1986, under which the Secretary of State involuntarily dissolved the Gary Datsun corporation, which had the effect that the corporation forfeited all its rights to carry on a business within the State of Montana. When that occurs, under § 35-6-104(5), MCA, the following is the result:
*406 “(5) In the case of involuntary dissolution, all the property and assets of the dissolved corporation shall be held in trust by the directors of such corporation and 35-1-921 or 35-2-711, whichever is appropriate, is applicable to liquidate such property and assets if necessary.”
I dissent.
JUSTICE SHEEHY and JUSTICE HUNT, join in the foregoing dissent of JUSTICE HARRISON.